Good morning, Your Honors. Good morning. Alexander Stolen, on behalf of Mr. Stevens, I'd ask to reserve one minute for rebuttal. All right. Your Honor, there are two points I'd like to address today. The factual issue of whether or not the plain view exception applies in this case. And the critical argument that we're making in terms of the facts are that officer on, the officer who claims that he did not draw his weapon until after he saw the weapon in the car, was not to be believed by the district court. And the evidence that we have on that point is actually four independent pieces of evidence to contradict Officer On's testimony. First, we have the testimony of Officer Fontes. As the court knows, Officer Fontes went to the driver's side of the vehicle while Officer On went to the passenger side of the vehicle, where he claims Mr. Stevens got out of the vehicle, turned around, threw a bag into the car, and raised his arms up above his head while walking backwards yelling, I didn't do anything, I didn't do anything. Officer Fontes' testimony was that he went to the driver's side of the car, but his attention was immediately drawn to Mr. Stevens, who was in the back seat, because he was shuffling. And he watched him. And his attention was then drawn, he even went so far as to raise a flashlight to watch what was happening. He then says, while he didn't see Mr. Stevens get out of the car, he watched Mr. Stevens back away from Officer On. So he clearly was in a position to see, and he testified he was watching. And he said at no point did Officer On, did Mr. Stevens raise his arms up and yell, I didn't do anything, I didn't do anything. So it directly contradicts Officer On's testimony that that event occurred. In addition to that, Officer On testified that he followed Mr. Stevens to the front of the vehicle, had a moment, thought about what was happening, went back to the car and then looked in. Officer Fontes' testimony in his report and testified at the hearing was, no, that immediately, within two to three seconds, he saw Officer On draw his weapon. Well, he said two to three seconds at one point, and then he said, could have been up to a minute. Well, Your Honor, he actually said two to three seconds when I did cross-examination. On redirect, he admitted to three to five seconds, and then on leading questions by the government, he said, well, it might have been up to a minute. But he made a statement of two to three seconds, then he made a statement of three to five, and then he went to, well, it could have been up to a minute. But in his police report, which he testified to in the testimony, was that immediately Officer On drew his weapon. He never saw the arms raised, he never saw my client saying a thing, and he says, Officer On followed him to the front of the car and his gun was drawn. Officer On wants the court to believe that all that happened, no gun was drawn, he did all of that, and then he went back to the car and looked in. That's also contradicted by the sergeant in this case, who is 25 years of experience. His job that day was to watch and observe while Officer Fontes went to the driver's side and Officer On went to the passenger's side. That was his job. He's a trained observer, 25 years on the force. And he testifies at the hearing, he never saw the arms raised, he never saw my client saying a thing. And he also testified on cross-examination that he would have seen that. Those were his words. He was ten feet away. He also testified that that's what his police report written on the morning of the incident also says. So we don't just have the testimony of Officer Fontes and the sergeant. We also have their testimony that their police reports written the next day said the same thing. So you're saying the District Court's factual findings then on the suppression motions are clearly erroneous? Absolutely. On that point, you're right. Absolutely. That's our position. How about the credibility findings? That's exactly what we're talking about, is that this Court should not defer to the District Court's credibility finding for several reasons. Number one, one of the statements the District Court made in making its credibility determination was that he felt that the impeachment evidence was merely one of omissions, not one of impeachment, not one of contradictory statements. But that's not correct. Officers Fontes and the sergeant's testimony directly contradicted what Officer Ahn said happened. Not only their testimony, but their police reports, which they said contradicted what he said. So the Court made a mistake when it said, according to it, the only thing that came out were omissions in the police report. That's not correct. Four sources of information directly contradict the testimony of Officer Ahn. There's another thing. Officer Ahn testified that when he walked with my client to the front of the car and then came back, my client was standing with Officer Fontes talking to him. Officer Fontes testifies never did that happen, that what he saw was Officer Ahn come to the front of the car, draw his gun, say get down, get down, and that's when Officer Fontes responded. How could Officer Fontes have been wrong about that? And he says that in his report. There's nothing about my client speaking to him. The judge, in this case, actually said in his findings that the impeachment showed that the time frame that Officer Ahn said it all happened could not have happened. And he said that because Officer Ahn testifies that my client got out of the back seat and he was still five feet away from my client coming to the passenger side when my client allegedly, according to Officer Ahn, gets out of the car. But Officer Fontes testified that he went to the driver's side, he talked to the driver, he asked what was going on, he heard the shuffling, he shined the flashlight, and then my client got out. Officer Ahn testified that his van door, which was pulled up either behind the car or to the passenger side, was open and he jumped out of the car and he proceeded immediately to the passenger side while Officer Fontes went to the driver's side. It's impossible that Officer Ahn wouldn't have been at the passenger side at the time Mr. Stevens came out, according to Officer Fontes. Can I clear up a question in my mind? Ahn was on the passenger side. Were there any other officers on the passenger side? No. Okay. Who was on the driver's side? Officer Fontes. Where was the supervisor? He was initially behind the car observing and then he walked to the driver's side. Okay. But that's why his testimony is critical, because I asked him, because I knew there would be an issue, could you see to the other side? Fontes' testimony was he saw the other side because he saw my client backing up. He saw him get out of the car, he saw him throw the bag into the car. So Officer Fontes' own testimony clearly demonstrated he had a clear view. The sergeant said the same thing. He said in his direct testimony, I observed what was happening and I would have noticed it in terms of the arms raised and I did the motion to suppress. The arms were raised and he's backing up. No one could have missed that. No one could have missed that and they testified they couldn't have missed it. They testified it didn't happen. The police report said it didn't happen. The only individual who says that happened was Officer Onn. Now, the district court also said something very interesting at that very moment of testimony where the arms are raised and I'm getting the cross-examination about the gun. He testified, because I wanted the record to reflect how he tossed the gun in, that he couldn't see the witness gesturing how the gun was tossed because he could only see from the shoulder up. Now, the way the district court is set up is there's a computer where Justice Thomas is sitting. The witness is over here and the judge is looking at the computer and trying to look at the witness but the witness is down so the judge is correct. He can only see from here up. He cannot see body language. He couldn't see the gesturing. All he could basically do is see the head and listen to the person testify. The only thing the judge said is I believe the demeanor of Officer Onn and that he knew the facts better. That was his reason for making the credibility determination that Officer Onn's in-court testimony was believable versus Officer Fonta's testimony, the sergeant's testimony and their two police reports. So if that's the case, how do you think the facts show what really happened? Well, Your Honor, I think based upon the time frame that you can get from the testimony and the testimony of Officer Fonta's and the sergeant, it's clear what happened here. That Officer Onn did not draw his weapon until after he saw the gun. He drew his weapon when the bag was tossed into the car because that's consistent with what Officer Fonta says. What you're saying is he drew his weapon when the bag was thrown in the car without knowing what was in the bag. Absolutely, Your Honor. Because he testified, he only knew what was in the bag when he looked into the car. Because if you put together Officer Fonta's testimony with the sergeant's testimony, it's not credible that he didn't draw his weapon at that time because it fits not only what they saw, it fits the time frame. And there was no reason to credit the testimony of Officer Onn versus the four independent sources of information the court had in front of it in terms of the reports and the testimony. Even the court acknowledged the time frame couldn't have happened the way Officer Onn said it happened. The court also made a credibility finding that the sergeant was credible. But the sergeant said he didn't see this and he didn't hear it. What he saw was an immediate commotion, gun drawn. Fonta's report says the same thing. Immediately the gun was drawn, within seconds. That could only have happened if the bag is thrown, he pulls his weapon. And you know, Your Honor, let's use some common sense. We have a faux jury here and I always say to a jury, use your common sense. If you're out there at 1 o'clock in the morning and a person comes out of the car and throws something in the car and you're an officer of limited experience, he's only had four years of experience, he drew his gun. He reacted too quickly. He drew his gun. That's what he did. Should he wait to get shot? No, Your Honor. But there's no... How did he know what was going on? Doesn't matter, Your Honor. No reasonable suspicion at that point. No evidence of a gun. Simply someone throwing a bag into a car. That's all he's got. There's no evidence that they did anything wrong in that car. There was no illegal parking. There was no nothing. They responded because they were driving around. They heard an argument. No evidence that there was abuse going on. They just went to the car. My client throws a bag in. At least in the United States, I would hope, throwing a bag in the car is not criminal activity. Not to draw a weapon. And that's what Officer Ong did. That's what the evidence suggests strongly he did. And the District Court's factual finding of credibility in this particular case, I would submit, should not be deferred to. Thank you. So if he did falsely seize or arrest him by drawing a gun, where are we with the fact that the officers either had or would look into the car and see a gun? Your Honor, the case law doesn't say what ifs. The case law in plain view says the officer has to have a legal right to be where he was when the plain view was made. So there's no reasonable suspicion to look in the window in the car? Absent. But we can't surmise what would have happened had they simply questioned everybody. What happened was the plain view of the gun was based upon what we would submit, a legal seizure of Mr. Stevens, without reasonable suspicion of probable cause. And the case law is clear. If that occurred, you can't surmise what if. Well, if it occurred it was because of the seizure that they looked into the plain view and saw the gun in the car, is that necessarily the case? That even if the arrest was illegal, is it possible or not possible? From a legal standpoint, is the plain view inspection of necessarily because of the illegal arrest? Yes. In this case, yes. Because you can't surmise what they might have done. They may never have looked in the car. They may have talked to them about what's going on. They may have said everything's fine. They leave. You don't know what would have happened. That's why the case law doesn't conject what might have happened had the plain view been done later. The issue is if you believe Officer Pulled that weapon at that time. That was an improper search. That was an improper seizure. And that renders the plain view illegal. If it's true to the arrest. That's right. And here it was. I mean, there's no question. Everybody's secure. They go back. He brings everybody, says, looks at the gun. So there was no issue that there was anything independent. And it doesn't matter. The law is very clear. The plain view cannot be predicated upon an illegal Fourth Amendment violation. My mind may be slipping a cog here. Was this a Terry stop in? Even if it was. My point is, Your Honor, that it wasn't a Terry stop because they didn't have any illegal parking. They weren't there after hours. There was no evidence of any walk up the car. Your Honor, I hope that you can be out at one o'clock in the morning and making some noise. And that's not reasonable suspicion. I'm not saying an officer can't come up to me for a Terry stop. They can't go up to the car and say, what I believe just on based upon noise. I'm not saying they can't go up to the car as a person and say what's going on back in the car. But even that, Your Honor, it's just a bag. There's nothing to it. Okay. Thank you. Morning. May it please the court. Marshall Silverberg on behalf of the United States. Mr. Silver, I believe, has tried to grasp upon what he thinks are inconsistencies in the testimony to create an issue that's not really there. As we briefed in page 18 of our brief, the issue is, the first issue should be, was when was the defendant seized? And because the Supreme Court has held in California versus Hodari, and in the case that was decided before that, that they decided in that opinion, Brow versus Inyo County, that the mere show of authority without submission is not a seizure. So even if you take Mr. Silver's conjecture that the police officer unholstered his gun, drew his gun, before he saw the bag, and there's no evidence to support that other than him trying to argue that by inference that's what happened. There's no evidence to support it. Even if that happened, so what? The Supreme Court of the United States says, if you don't submit to a show of authority, there's no seizure. In this case, it's uncontested that the defendant backed up and said, I know nothing, I know nothing, and he walked around to the front of the car. So is it supposed to be weapons drawn? Weapons drawn, usually if a weapon's drawn and you're facing a gun, you don't walk away. Yeah. Right. I mean, you stop, right? That's why I find these cases somewhat odd. I mean, I understand the case law, but the test usually is would an objective person feel free to leave? You've got three officers around you, you've got cars around, and under case law, the theory is, oh, yeah, you should just feel free to drive off, which is counterintuitive. Okay. And then you take it a step further. In this case, the guy draws a gun. There are two sets of cases, Your Honor. I think if he starts moving away, he's going to get shot. But he didn't move away. That's the whole point. He starts walking if you're running away. But he did. So there are two lines of cases. There's the Mendenhall line of cases, and then there's the cases that start with Brow versus Ingle County, continues to California versus Hodari, and then most recently, in 2007, the Supreme Court decided Brennan versus California. And what the Supreme Court said at Brennan in reconciling the two lines of cases is that even if there's a show of authority, even if a reasonable person would believe that he's in custody, if that person does not submit to the show of authority and leaves, then there is no seizure. So because in Brow versus Ingle County, there were police officers with sirens blazing that chased them for 20 miles. He doesn't stop. They say there's no Fourth Amendment seizure in that circumstance because he didn't stop, even though a reasonable person would have believed he was seized because he's being chased by the police with sirens. He didn't actually get seized until he died during a car crash that followed after a 20-mile fleeing from the police. So Mendenhall, the whole line of cases going from Mendenhall, when would an objective person think he's been seized, doesn't apply here because this defendant walked away. If he hadn't walked away, then you're absolutely right. Then the issue would be, when did he pull the brakes? So that's just a matter of law. When was he seized in this case? In this case, the judge and three police officers all testified that he was not seized until he was handcuffed by Officer Fontes. They all testified. All three said that Officer Fontes... He wasn't down on the ground? He hadn't been seized? Yeah, he wasn't seized until he was down on the ground. He said, cuff him. No, he was down on the ground. Then he was seized. Because he walked away. He backed off for a few feet? How many feet? He backed off the length of the car and walked around the front of the car and was near Officer Fontes. That's why Officer Fontes cuffed him and not Officer Ahn, because he was closer to the defendant at that point. So he was able to walk whatever it is, 8, 10 feet to the front of the car, around the car, and he was by Officer Fontes. I thought Officer Fontes walked up to see what was going on. Yeah, Officer Fontes was around the front of the car, not on the passenger side. So the way it was, you had the suspect's car here, the police van over here off to the left. Officer Fontes goes around the top, Officer Ahn goes around the back. And that's why there's a difference in time. And Mr. Silber is absolutely wrong, because Officer Fontes is right there. Officer Ahn has to go all the way around the back of the SUV and get around. That's why it takes him longer to get there than it takes Officer Fontes. So his speculation as to what transpired, as to when the gun was drawn by Officer Ahn, is directly contrary to the testimony of Officer Ahn, Officer Fontes, and Sergeant Calagutta, who all say that Officer Ahn doesn't draw his weapon until he comes around to the front of the car, after he's seen the package be thrown in the back of the car. And that's a factual finding that the district court makes. It's a clearly erroneous standard. You've got three police officers, and the district court's saying that's what transpired. All you have is the defense counsel saying that, well, they said they didn't see the hands raised in the air. And that's certainly understandable, because this is a Ford Explorer that's, you know, it's a high car. They're on the other side of the car, and there's nothing that says the hands were raised like this. It says, I know nothing. So why would someone on the other side of a Ford Explorer see the hands raised to shoulder level? There's nothing in the record that says that the hands were raised totally above his head. It was a question by Mr. Silver that said, did you see him throw his hands over his head? And he said no. But the testimony from Officer Ahn was he raised his hands. Raising his hands doesn't mean that they're raised totally over his head. I mean, if someone says, I know nothing, chances are he doesn't say, I know nothing. He says, I know nothing is a more common gesture with your hands. You know, I know nothing, I know nothing. He's backing up. Counsel seems to be giving us lots of facts that could be in dispute, semantical, textual, time-wise, whatever. You're saying that there wasn't anything substantive, different, and that there was no clear error because the judge had to make a decision on all this examination, cross-examination, direct, whatever. A perfect example is the comment by the court that he could only see the witness from the shoulders and the head up. He was only talking about which hand he had tossed the gun with. There's nothing in the record to say he couldn't see the demeanor of the witness, his face when he was testifying, just that he couldn't see which hand he was using to toss the weapon in court. He takes that statement and says that the court was not in a position to judge the demeanor of the witness. There's nothing in the record to support that. And, in fact, Judge Seabright said, I'm judging the demeanor of the witness. So, I mean, you have to believe that the district court is speaking honestly when he says he can see the demeanor of the witness when he says on the record I'm making these findings based upon the demeanor of the witnesses. What about his argument about the supervisor should have seen all this because he was there to observe and all that business? What was that all about? Well, the supervisor, again, is in the van and he's the driver. So he's getting out the left side of the van. So he's the one that's furthest away from this whole thing. And he's basically, again, in the supervisory capacity. He's got two other police officers. One goes to the driver's side. One goes around to the passenger's side. And, you know, he's a 25-year veteran and he's just, you know, he's just there, you know. And his testimony is claimed to be inconsistent with that of ours. In no substantive way is it inconsistent. He sees the gun being tossed. He sees the officer draw his weapon on the front of the van. I mean, those are really the only issues. If you don't, if you get past the California versus Haddari issue, which I don't think you can, I think that disposes of this whole case because there's no doubt, it's totally uncontested, that the defendant was able to walk away from the police officer whether he had his gun or not. So time-wise, he gets out of the van, he throws the bag. And the question is, if he doesn't draw the gun until his front, this man has been walking away and walking away from authority. So when do you think that Han drew his gun? He saw the bag, saw the gun, so then he drew it and the guy's still backing away? He sees Han throw something in the car. First of all, he sees Han get out of the car and look surprised. Why is he looking surprised? Because he sees the officer on the other side of the car, doesn't know there's an officer right behind him. So he backs out, he turns around, does a 180, sees the police officer right in front of him. He's holding his gun, there's no doubt, it's uncontested. He's holding a gun wrapped in a plastic bag, tightly wrapped. He sees him and he tosses it in the car. I don't want to be caught with a hot potato, so he tosses it in the car in the open door. And then he closes the door and then he starts walking away. And he says, I know nothing. I know nothing. I mean, he wasn't even asking any questions. I know nothing. Why is he saying I know nothing? It's like Schultz in Hogan's Heroes. I know nothing because he knows everything, right? He knows exactly what's in the bag. So when does Han testify that he recognized the gun in the package? So Han says he takes a couple steps to the front of the car following the defendant, then thinks, hey, I better see what's in the car. So then he walks back. He looks through the open window. The window was three-quarters of the way open. He shines his flashlight in it and sees the butt of the gun. He sees its ground and he sees the shape of the gun. It looks like it's got a barrel and it's got a cylinder. And then he walks around and says, oh, my goodness, this guy just had a gun. Maybe he's got another gun. He said, oh, my goodness? Well, I'm just – you're correct. Han was a very good – one of the police officers, right? Han. Right. Anyway, then he hurries up to the front of the car to effectuate the arrest because he's seen a gun being tossed in the car. It's the only set of facts that make any sense. If he had drawn his weapon on the defendant on the side of the passenger side, like defense counsel says, he wouldn't have kept walking away and risked being shot. He would have stopped right there. But, I mean, it just sort of defies common sense. You get three officers around and you say, all right, let's just say there's a full artificial disclosure. You have balloons over their heads like cartoon things. I'm drawing my weapon and you are free to leave. However, if you do, you're going to be taken down in handcuffs. Again, it doesn't matter. Well, I know. But, I mean, doesn't it sort of defy common sense? They weren't really free to leave, were they? Well, he left. And that's the only thing that really matters. It would be a whole different legal analysis, I agree, if he hadn't left. Then we would get into the whole mental factors, the totality of the circumstances. You'd have another theory for why he wasn't arrested. Well, then I would say he had reasonable suspicions to make the stop in the seizure at that point because it's 1.20 in the morning. It's a deserted area. They hear a fight ensuing. They're on patrol looking for these types of violations. You know, they're doing their job. There's no doubt the police have a right to go up. What types of violations? A man and his girlfriend quarreling in the car. Well, there are three people. There's not just a man and a girlfriend. But they're looking for noise violations, and that's this type of violation. I mean, they're having a fight in a public area. I don't know if they could have given them a ticket or not, but that's what they're looking for. They say alcohol and noise violations. So there's no doubt. I have to tell you, if you decide that the officers acted improperly, I don't see how, but, I mean, that's their job is to go up there and see, is this a domestic dispute? Is somebody being hurt? I mean, this is why they're sworn to enforce the law. When did the seizure occur is the question. To all due respect, I don't think there's any doubt that a seizure doesn't occur until after he's handcuffed on the front of the car, because there's absolutely zero evidence other than speculation by defense counsel that there was a seizure earlier, because he wants to come up with a story of facts that gives him an argument. The three police officers under oath say that he doesn't draw his gun until he's on the front of the SUV. When we're talking about seizure legally, it's always a factor of determination for the district judge. When a police officer comes up to me who's 6'8", with mace and a big stick and a gun, I'm seized. I mean, there's no question, but legally, what's to decide what the judge saw here is what you're saying. Right. It's a question of whether you're seized within the meaning of the Fourth Amendment or not. And so that's why in Mendenhall and all the cases that follow, you go through how many police officers, were the guns drawn, were they wearing uniforms? I would have thought that in California v. Hidari, when they chased that youth, that young man for blocks, a police officer's chasing him on foot, he would have thought he was seized. But the Supreme Court said no, because he ran away, and he was successful in running away. And in the Brower case, when they chased him for 20 miles, multiple police cars with sirens going, you would have thought you were seized. I mean, in your scenario, you could have run away from that 6'9 person as a law-abiding citizen. You wouldn't do it. But if you did do it, the court is saying you're not seized. If you don't do it, then, yes, you could be seized, depending upon all those Mendenhall factors. Okay. Anything else? No. Thank you very much. Thank you. Very quick responses, because I think some of the facts are totally incorrect. But I want to address this issue of my client didn't surrender when the gun was drawn. That's not what we're saying. We're saying that after he threw the gun in the car and the door was closed and he began to back up, that's when Officer Ahn drew his weapon. And according to all of the testimony from Officer Ahn, if you believe that part of it when he drew his gun, Officer Fontes and the sergeant is the minute Ahn drew his gun, Fontes says that was the arrest, and he went down. He didn't walk away. He was done. That's what the sergeant says, that the moment he saw the gun drawn, my client was seized and it was done. The issue is when was the gun drawn? We believe the gun was drawn when my client was backing up, Officer Ahn sees the bag thrown in and draws his weapon. And according to Officer Fontes, gun was drawn, seizure made. No more walking away. According to the sergeant, that's exactly what happened. I heard the commotion, and the next thing I knew, gun was drawn, he was seized. Our version is not that he walked away after the gun was drawn. He was subdued the moment the gun was drawn. And all the testimony is the minute the gun was drawn, he was subdued and he stopped. The issue is when was the gun drawn? These weren't stipulated facts. These were facts drawn out in direct and cross-examination. That's correct. But here's the problem. There has to be an appeal for credibility. You can't just have a district court making a credibility finding and saying that's it, that's why we're here. We have four independent sources of information that directly contradict the information provided by one witness. And we're asking the court, at some point when you have a district court who doesn't see body language, he doesn't say the memory of the witnesses was bad or anything. He simply says, I'm choosing to believe one cop over four others. The two cops who testified and their police reports. And the inconsistencies, the implausibility of the arms being raised and walking backwards. And counsel says, well, he didn't raise his hands like this, he raised it like this. I want to tell you, point to you, page 44, ER2, the sergeant who said he didn't see it, he didn't hear it, and he was in a position to have noticed it. That's his testimony. So there wasn't an issue that the sergeant said in testimony, you know, the SUV was large, I didn't see it, I couldn't see it. Believe me, if the government had that, they would have brought that out. I was the one who questioned the officer and the sergeant, and the sergeant said he was in a position to see it, and he didn't see it. The rational facts here are that as soon as the bag went in, he closed the door, he started backing up, on drew that weapon. It's consistent with the police reports, it's consistent with the testimony. And for the judge to simply say, I want to believe this witness over four other independent sources of information, without pointing to anything in specific other than a demeanor, a general characteristic, that's all he has. Well, we'll try to figure this out at some point. Thank you. The case is arguably submitted. There's one more case for the morning, a key time case. So we're going to take a break. And anyone who's interested in coming back and hearing a key time case, welcome. Thank you.
judges: Reinhardt, Brunetti, Thomas